Bobby Joe McADAMS *v.* Robert Lynn McADAMS

02-666                                                            109 S.W.3d 649

Supreme Court of Arkansas
Opinion delivered June 5, 2003

*Appellant*, pro se.

No response.

RAY THORNTON, Justice. On April 12, 1966, appellant, Bobby McAdams, and his wife, Wanda McAdams, filed a petition to adopt appellee, Robert Shepard [McAdams].[1] In

---

[1] We note that the cover of the record filed in this case and appellant's brief identifies the parties by initials rather than by their names. Because this case does not involve minors, we will use the parties' names.

their petition, Bobby and Wanda alleged that they were the "natural parents" of Robert, who was born out of wedlock. They further alleged that Robert had lived with Wanda since his birth on July 12, 1956, and that he had lived with Bobby since he married Wanda on January 11, 1957. Bobby and Wanda requested that they be permitted to adopt Robert and that his name be changed to Robert McAdams.

Attached to their petition for adoption was a notarized verification. In this verification, Bobby and Wanda acknowledged that they had read the petition, and that the facts stated in the petition were "true and correct."

On April 14, 1966, a waiver, entry of appearance, and consent to adoption was entered by Herman Lee Shepard. In this pleading, Mr. Shepard stated that he was married to Wanda McAdams until 1956. He further stated that he was not the father of Robert Shepard, but that he believed that he was legally Robert's father because the child was conceived and born while he and Wanda were husband and wife. Mr. Shepard consented to the adoption.

On July 21, 1966, an interlocutory decree granting the petition for adoption was entered. In this decree, the probate court found: "that the petitioners [Bobby and Wanda McAdams] are the natural parents of the said minor child [Robert Shepard]" and that "it would therefore be in the best interests of said minor child that he be adopted by the petitioners." On January 26, 1967, a final decree granting the couples' petition for adoption was entered.

On November 13, 2001, Bobby McAdams, appellant, filed a motion to annul the adoption of Robert McAdams. In his motion, appellant alleged that Herman Shepard and Wanda McAdams were the natural parents of Robert. He further alleged that Wanda McAdams and Herman Shepard had fraudulently convinced him that he was Robert's natural father. In a brief in support of his motion to annul the adoption, appellant alleged that if he had known that he was not Robert's natural father, he would not have agreed to the adoption.

On January 4, 2002, a hearing was held on appellant's motion. After considering appellant's arguments, and reviewing the exhibits introduced at the hearing, the trial court denied

appellant's motion to annul the adoption. The trial court also denied appellant's request for paternity testing.

On January 25, 2002, appellant filed a motion requesting that the trial court reconsider its earlier order denying his motion to annul the adoption. Appellant also requested a paternity test and that the trial court hold an evidentiary hearing. On February 26, 2002, the trial court denied appellant's motion for reconsideration.

On appeal, appellant raises three issues for our consideration, and we affirm the trial court.

█ In his first point on appeal, appellant argues that the trial court erred when it denied his motion to annul the adoption of Robert McAdams. We review probate proceedings *de novo*, but we will not reverse the decision of the probate court unless it is clearly erroneous. *Mayberry v. Flowers*, 347 Ark. 476, 65 S.W.3d 418 (2002). When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses. *Id.*

Mindful of our standard of review, we turn to the merits of appellant's appeal and consider whether the adoption decree should have been annulled based on appellant's allegation that it was procured by fraud. We begin our analysis by looking to the statutes that were in effect at the time the adoption petition was filed. *See Wheeler v. Myers*, 330 Ark. 728, 956 S.W.2d 863 (1997) (holding that we look to the law in effect at the time of the adoption when we are testing the validity of an adoption decree); *see also In the Matter of the Adoption of J.L.T. and M.M.T.*, 31 Ark. App. 85, 788 S.W.2d 494 (1990).[2]

█ At the time the petition for adoption was filed in 1966, the subject matter was governed by Ark. Stat. Ann. § § 56-101 *et. seq.* (1947). Arkansas Statutes Annotated § 56-110 (1947) addresses annulment of an adoption decree. The statute provides:

> A petition to annul a final adoption decree may be filed in the court which entered the decree on any on the following grounds:

---

[2] We note that the law in effect at the time an order of adoption is entered also controls the distinction between extrinsic and intrinsic fraud as a basis for setting aside the order.

    (a) The adopting parents have failed to perform their obligations to the adopted person.

    (b) In case of minor children the adopting parents have become separated or divorced within two years after the rendition of the final adoption decree.

    (c) That the adopted person, within five years after his final adoption has developed feeble-mindedness, insanity, epilepsy, any psychosomatic or mental disturbance, venereal disease, or any incurable disease as a result of a condition existing prior to adoption unknown to the adopting parents. Upon proof of one of these grounds, the court may set aside the adoption decree and may make whatever disposition that appears to be proper.

*Id.* Arkansas Statutes Annotated § 56-112 (1947) provides a statute of limitations for parties seeking to challenge an adoption order. The statute provides:

No action shall be brought to set aside an adoption decree for any procedural or jurisdictional defect except within two years after its rendition, if the adopted person has in fact lived with the adopting parents that length of time except on one of the grounds specified in section 11 [56-110].

Ark. Stat. Ann. § § 56-112.

    ■ ■ Based on the statutory language, appellant's motion to annul the adoption decree, which was filed approximately thirty-four years after the decree was entered, is barred by the statute of limitations. However, our precedents reflect that if appellant can establish that the adoption decree was procured by extrinsic fraud practiced upon the court the statute of limitations barring his action will be tolled. *See Sumter v. Allton,* 278 Ark. 621, 648 S.W.2d 55 (1983) (holding that fraud on the part of a biological mother and her new husband in falsely alleging that the biological father had abandoned his child when he had not, constituted an extrinsic fraud which tolled the applicable statute of limitation on the biological father's subsequent suit to set aside the final order of adoption). *See also Olney v. Gordon,* 240 Ark. 807, 402 S.W.2d 651 (1966).

    ■ ■ When we consider whether an order may be collaterally attacked based upon allegations of extrinsic fraud, we have explained that:

> [T]he fraud for which a decree will be canceled must consist in its procurement and not merely in the original cause of action. *It is not sufficient to show* that the court reached its conclusion upon *false or incompetent evidence* or without any evidence at all, but it *must be shown that some fraud* or imposition *was practiced upon the court* in the procurement of the decree, and *this must be something more than false or fraudulent acts or testimony the truth of which was, or might have been, in issue* in the proceeding before the court which resulted in the decree assailed.

> \* \* \*

> The law is settled that the *fraud which entitles a party to impeach a judgment must be fraud extrinsic* of the matter tried in the cause, and *does not consist of any false or fraudulent act or testimony the truth of which was or might have been in issue in the proceeding* before the court which resulted in the judgment assailed. *It must be a fraud practiced upon the court in the procurement of the judgment itself.*

*Alexander v. Alexander*, 217 Ark. 230, 229 S.W.2d 234 (1950) (internal citations omitted) (emphasis added). *See also Wunderlich v. Alexander*, 80 Ark. App. 167, 91 S.W.3d 547 (2002). We have also noted that the party seeking to set aside the judgment has the burden of showing that the judgment was obtained by fraud, and the charge of fraud must be sustained by clear, strong, and satisfactory proof. *Karnes v. Gentry*, 205 Ark. 1112, 172 S.W.2d 424 (1943).

In the case now before us, appellant argues that the order granting the adoption should be annulled because he was fraudulently induced into adopting Robert McAdams by Wanda McAdams and Herman Shepard. Appellant further contends that if he had known of the fraud at the time of the adoption, he would not have adopted Robert. However, based on the foregoing case law, the issue is not whether fraud was perpetrated upon appellant, but whether there was evidence of extrinsic fraud practiced upon the court in the procurement of the adoption decree. Appellant has failed to present evidence showing that the adoption decree was procured by extrinsic fraud. The only proof offered by appellant in support of his allegations of fraud was his unsupported testimony at the January 4, 2002 hearing that is directly contradictory to his sworn statements made more than thirty years earlier in the adoption petition. We conclude that appellant has failed to demonstrate by clear, strong, and satisfactory proof that the adoption decree was obtained by extrinsic fraud practiced upon the

trial court.[3] Having determined that there is an absence of extrinsic fraud in this case, we also conclude that appellant's action is barred by the statute of limitations. Accordingly, the trial court correctly denied appellant's motion to annul the adoption of Robert McAdams.

Next, appellant argues that the trial court erred when it denied his request for paternity testing. Arkansas Code Annotated § 9-10-104 (Repl. 2002) provides:

> Petitions for paternity establishment may be filed by:
> (1) A biological mother;
> (2) A putative father;
> (3) A person for whom paternity is not presumed or established by court order; or
> (4) The Office of Child Support Enforcement of the Revenue Division of the Department of Finance and Administration.

*Id.*

Appellant contends that he is a "putative father," and that he may request paternity testing. Appellant's contention is misplaced. A "putative father" is defined as any man not legally presumed or adjudicated to be the biological father of a child, but who claims or is alleged to be the biological father of the child. *R.N. v. J.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001). Appellant has been adjudicated to be the biological father of Robert McAdams. Specifically, the adoption decree provides: "the petitioners [Bobby and Wanda McAdams] are the natural parents of said minor child [Robert McAdams]." Because appellant does not fit within the statutorily-defined group of individuals upon whom standing is conferred to challenge paternity, we conclude that the trial court properly denied appellant's request for paternity testing.

Finally, appellant contends that the trial court erred in denying his request for an "evidentiary hearing." Appellant was given an opportunity to perform discovery and present his eviden-

---

[3] We note that this case was certified to us from the court of appeals pursuant to Ark. Sup. Ct. R. 1-2(b)(2) in order to determine whether appellee's mother, Wanda McAdams, was a necessary party that should have been joined according to the language in Rule 19 of the Arkansas Rules of Civil Procedure and whether that issue can be raised by an appellate court *sua sponte*. Upon review of the issues presented in this case, we conclude that we improvidently granted the request for certification for the purpose of addressing the procedural issue raised by the court of appeals, and we decline to do so.

tiary findings at a hearing held January 4, 2002. Because an evidentiary hearing was held in appellant's case, we cannnot say that the trial court erred in failing to hold an additional hearing.

Affirmed.

CORBIN, J., not participating.